et cetera. Ms. Garrett, nice to have you here. Thank you, it's nice to be here. May it please the Court, my name is Linda Garrett and I represent Greenville Hospital System. And this case is about whether... Just hold on a second, let's let the noise subside and the crowd gather here. This won't count against you. There we go. Okay, start over here. This case is about whether a health care provider that has a valid assignment of benefits but is also a party to a managed care contract and that contract has an arbitration provision, is that provider precluded from bringing a case under ERISA? Aetna says they are precluded and of course our position, the hospital's position is no, they are not, based on the following. First, you take a look at the arbitration clause in the managed care contract. And yes, we do concede it is a broad arbitration clause. However, it is our position that there's really no controversy as to whether or not section 5.1 of the agreement applies. That part states, that particular position states, except when a member requires emergency services, hospital agrees to comply with any applicable pre-certification requirements under the member's plan prior to the provision of hospital services. We're not contesting that that particular provision applies, we agree that it does. There's really no controversy there. So the real controversy is now taking into the plan. We need to now look at the ERISA plan to look at are benefits available. We're not looking at what should be paid for benefits, which would again be clearly a provision that would arise under the hospital agreement. But we're looking at the plan to make a benefit determination. Can I ask you a question? I mean, I understand what you're saying, that your claim sort of arises under ERISA, it arises under the member plan. But that doesn't mean it doesn't also relate to the agreement, right? The arbitration clause covers both issues that arise under the agreement and also issues that relate to it. So I guess I'm sort of, I see what you're saying about how it might not arise under the agreement. But surely it relates to the agreement. When Aetna denied the claim, they did it because they say GSS didn't comply with the agreement, the part that says they'll follow the certification procedures. Well, the point there, and I follow what you're saying, but the point there is if the actual agreement had stated that the hospital agrees to abide by pre-certification requirements in the agreement, then yes, clearly we wouldn't even be here. Then it would arise under the agreement. Under the agreement. But that's not what it says. It says that the requirements under the member's plan. So now you've got to look at the ERISA plan. But that statement, just to go back to that point, that statement is in the agreement. Yes, that statement is in the agreement, correct. It relates to that statement. It relates to 5.1. But we're not, our contention is whether or not, we could say, well, this doesn't apply. We don't have to look at the member's plan. We can just look at the agreement. And then we would be in a controversy over whether or not this agreement is in contention. But it's not. But all, it doesn't have to be in contention. The claim doesn't have to arise under it. The only thing that's required for the arbitration clause to apply is that the claim relate somehow to the agreement. And I guess I'm having trouble seeing sort of a total lack of relationship between the dispute in this case and an agreement that says GHS will follow the certification procedures in the plan. And the member's plan, exactly. So if this were a case over the pricing of the claim, then I would say 100 percent that yes, it's going to arise out of and it's going to pertain to this agreement. But, again, we need to look at that. Arise out of and relate to mean the same thing. Okay. Is that what you're saying? It would both arise out of and pertain to? Yes, correct. You think one of them is redundant. It should have either just said arise under or relate to. Or relate to, yeah. I mean, does the agreement apply to this particular controversy?  Historically, managed care contracts have been about steering patients and the pricing. The benefits that are going to be payable, the prerequisites for the payment of benefits, historically have been under the plan document. So now we're getting into looking at the ERISA plan document, which in our position takes it out of the agreement. But the agreement points to the member plan, correct? In several different provisions in the plan, it does point to the agreement. Even notwithstanding that, your position is that this does not relate to 5.1? Exactly. It's the benefit determination. It takes it out of this agreement and takes it into the agreement between the patient and the insurance company. Are you saying, I mean, is your position then that any time sort of an agreement cross-references a plan,  I think we have to look at the specifics of what the contention is. What is the agreement state? For example, in this particular agreement, in order to determine what are covered benefits, you have to look at the plan. You don't look at the agreement. You're not to try to decide what are covered benefits. The agreement says nothing about that. You've got to switch over to the ERISA plan. Likewise, for the requirements for pre-certification, and not only that, what are the penalties, if you will, for the lack of pre-certification? There's a conflict between what's in the agreement and what's in the ERISA plan. And I'll get to that in just a few minutes, too. We are creating some muddy waters here. Which one do you go by? I may be misremembering, but I thought even sort of the line of cases you were relying on, the ERISA preemption cases like Lone Star. Don't they even say, look, the mere fact that something cross-references the plan doesn't mean that it's an ERISA claim? In the removal cases, yes. And those cases are instructive here as well. I know you're relying on them, but I guess I'm struck by the fact that if I'm remembering right, Lone Star says, look, the fact that you cross-reference the plan, that's not enough. There's always going to be cross-references to the plan. And that doesn't mean that it doesn't arise under the agreement. We need something more than that. And that particular case, if I remember correctly, was about pricing. They were arguing over the correct pricing of a claim. Here we're saying this is not about pricing. This is about a member's benefits. And this agreement says nothing about the benefits. It flips you over into the patient's plan. And it's your position that unless the question is completely answerable by looking at the provisions of the agreement, it doesn't relate to the agreement? Like if I have to look at something else other than the agreement, that it's no longer arising under or related to the agreement? I would agree with that. Yes, I would definitely agree with that. Yes, yeah. And getting into my next point with this, even if this court decides the arbitration provision is broad, clearly because the agreement references the benefit plan, we're going to say with the arbitration argument you lose. However, Greenville Hospital System did not bring this claim as a direct action. Greenville Hospital System brought this claim as an assignee of a plan participant, which has been allowed since those first Herman Hospital cases in 1988. Aetna was not named as a defendant. The plan was named as a defendant. My yellow light is already on. So my last point here, which is another, I think, very important point, the United States Supreme Court said in the Aetna Davila case that the purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. We're going to end up with several different kinds of cases when you get to ERISA. Suppose the hospital has a valid assignment of benefits, and they sue at the plan, which is fully insured by ERISA. They also have a managed care contract. Okay, possibly they're stuck with a managed care contract. But what if companies such as Aetna are not truly the insurers? They're just third-party administrators, and we really want to go after the plan, a self-funded plan, but yet we've got this managed care agreement. Are we stuck with the managed care agreement? And what happens if we go under the managed care agreement and Aetna says, oh, yeah, we used to be the third-party administrator for that plan, but we no longer are? Where is the hospital left? And then the last issue of a case, if the patient got involved and the patient brought an ERISA case against the health insurance company, you could end up with they're going to be looking at the plan, and you're going to end up with two different results. If under the plan it says failure to pre-cert,  but yet if you're bringing the claim under the managed care agreement, it's a complete denial, there's a disconnect there, and how are we going to fix that disconnect? Unless you have a little light going, unless you'll have questions, I'm done. Thank you very much. You've saved some time for rebuttal. Thanks. Ms. Durbin? May it please the Court, I apologize in advance. I have laryngitis, not a good thing to get the day before my oral argument, but I'll try to speak clearly. I'm Debbie Durbin, and I'm here to represent Aetna, the appellee in this case. First of all, we think this dispute does rise under the arbitration provision. If you look at Section 5.1 in the provider agreement, it says that not only does Greenville Hospital agree to comply with any applicable pre-certification requirements under the plan, it also agreed to notify Aetna within two days of all admissions of members. That doesn't refer to the plan at all. If you look at the reason why Aetna declined this claim, it said it was declined because Greenville Hospital had not pre-certified or notified in a timely manner. So we do think that this does arise under the arbitration agreement. The second point that Greenville Hospital made was that it was suing as an assignee of the patient or the member in this case, and we contend that Greenville Hospital doesn't have standing to sue as an assignee. In this situation, because there's a provider agreement and because Greenville Hospital is a preferred provider under this agreement, Greenville Hospital has agreed that it will not seek any recourse from the patient. So the patient is held harmless. The patient has no damages. The patient has no injury. In fact, the patient got the services and does not owe Greenville Hospital anything for that. So you can only assign rights that you have, and in this case we don't believe the patient had any rights to assign to Greenville Hospital, so Greenville Hospital doesn't have the standing to bring this as an assignee. And I think this Court's holding in the Brown v. Socorro case is very instructive, if not controlling in this situation. I will address, because Greenville Hospital addresses in their brief, that there is a Third Circuit opinion out called Cardionet v. Cigna, I believe, that did reverse a district court case that had compelled arbitration. But I would tell you that that case is distinguishable from here on numerous bases. First, the Cardionet arbitration provision was not a broad one. It was only related to the interpretation and performance of the contract. It did not include the arising under and related to language. And so the Court found that to be a very narrow arbitration provision. The Court also in Cardionet, although it did not discuss this, if you go back and look at the complaint in Cardionet, it is clear that Cardionet had recourse against the patient here. The patient remained liable for the services that were provided that Cigna did not pay for. This is not the situation here. And there is a brand-new case out of the Southern District of New York in the Third Circuit, I think, that was decided August 31st, just a couple of weeks ago, called Merrick v. UnitedHealthcare. I have a Lexis site for that. It is 2015 U.S. District Lexis 116181. And that case, in fact, is very similar to the facts here. Distinguished Cardionet, which is in their circuit, did find that there was no valid assignment here because the patient remained liable for what was done. And also because the provider there had failed to comply with the terms of the provider agreement. And finally, I will say that even if the Court finds that Greenville Hospital is bringing this case as an assignee, that it is not unprecedented. In fact, there is precedent in this Court to hold non-signatories to a term of arbitration provision that they didn't sign, and that those situations have been where the non-signatory gets a benefit from the contract that has the arbitration provision in it or is related to the contract and here we would say the patient got a very real benefit from the provider agreement because the patient is not liable, does not have to pay for those services that were denied to Greenville Hospital. If you have any questions, I'll be glad to answer them. I do have a question. So if you would just kind of assume, I just want to make sure I understand your argument about the idea that, well, this is a derivative claim, it's not a direct claim, so why would it be bound by the agreement arbitration clause? So if you would just assume for a minute that GHS does have derivative standing, just assuming that they do, and also that the patient, him or herself, would not be bound by the arbitration agreement. So now GHS is sort of the assignee of a claim that would not, if brought by the assigner, require arbitration. So then what's wrong with the argument that, okay, so if the member, the member wouldn't have to arbitrate and now GHS is standing in that plan member's shoes, why does GHS have to arbitrate? Because I believe that really it would be GSH as the assignee, so the member would have to arbitrate because the member is getting. But I was asking you if you would, just for purposes of this question, to assume that the member would not have to arbitrate because the member has signed the agreement, the member knows nothing about the agreement. So if we just assume for a second. I guess what I'm saying is if I think the member wouldn't have to arbitrate, does that mean that GHS doesn't have to arbitrate too, or do you have another argument? No, I believe that if you found that the member did not have to arbitrate it and there was a valid assignment that the provider had an assignment from the member, then no, the member would not have to arbitrate it. Right, the member wouldn't have to. But does it also mean then that you lose, that GHS doesn't have to arbitrate? I believe so under those facts. I think you're correct. But I don't think those are the facts in this case. Okay, thank you very much. Thank you very much. Ms. Garrett? Just a couple of points. On the explanation of benefits where Aetna denied the claim, there was no reference whatsoever to lack of notification. It just said simply that the payment was adjusted because pre-certification was not received in a timely fashion. Nothing about notification. Secondly, we really haven't gotten into the issue of whether or not the patient could have owed money to Greenville Hospital System. We never even got to that point. There are instances in the managed care agreement where patients are responsible for payment, and that would be something that if this case were sent back down and treated as an ERISA case, we could get into those particular issues. That's all I have. Thank you very much. Thank you very much, Ms. Garrett.
judges: Robert B. King, Pamela A. Harris, George Jarrod Hazel